STATE OF IOWA, Appellee, v. FLORENCE HUSTON, Appellant.

**HOMICIDE:** Killing Unintended Person. An assault, with malice
1, 4 aforethought, on one person, resulting in the death of an unintended person, constitutes murder.

**HOMICIDE:** Rebutting Malice. Evidence, even though it be hear-
2 say, may be admissible to show that the possession of a dangerous weapon was innocent, and without premeditation.

**HOMICIDE:** Self-Defense—Rumors as to Character. Reports as to
3 the dangerous character of a party may be rejected by the court, when the accused testifies that he personally knew that such party was a dangerous character.

**HOMICIDE:** Killing Unintended Person.
1, 4

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

NOVEMBER 22, 1919.

PROSECUTION for murder in the first degree. There was a verdict and judgment of guilty of murder in the second degree, and a sentence of imprisonment for life. The defendant appeals.—*Affirmed*.

*F. T. Van Liew* and *John T. Mulvaney*, for appellant.

*H. M. Havner*, Attorney General, *A. G. Rippey, R. R. Nesbitt*, and *J. E. O'Brien*, for appellee.

EVANS, J.—On the night of January 23, 1919, Clora Davis was killed by a bullet discharged from a revolver in the hands of the defendant. The evidence tended to show

that, if the bullet was intentionally dis-

**1. HOMICIDE:**
**killing unin-**
**tended person.**

charged by the defendant, it was not her intent to shoot Clora Davis. The criminal intent of the defendant, if any, was directed not to Clora Davis, but to her husband, Charles Davis. In that sense, the shooting of Mrs. Davis rather than of her husband was accidental and unintentional. At the time of the shooting, the defendant was engaged in an altercation with Charles Davis. Her testimony as a witness tended to show that she had no other purpose than to defend herself against his attack. The Davises were operating a restaurant. The shooting occurred in the restaurant. The sister of the defendant was the daughter-in-law of the Davises, and was engaged in work in this restaurant. The defendant came into this restaurant about 12:30 A. M., pursuant to a telephone conversation shortly before, both with her sister and with Charles Davis. A few excerpts from the testimony will be sufficient to show the general setting of the stage upon which the tragedy was enacted by the defendant. The defendant testified that she called her sister, Georgia, on the phone, to tell her that she would call for her on the way home. The same call by the defendant resulted in two conversations: one with the sister, Georgia, and one with Charles Davis. Davis testified as follows:

"I went to talk to her, and Florence got very rough. When she started to call me sons-of-bitches, I hung the phone up. Ten minutes after that, she was in there with the gun. Over the telephone, she said, 'What are you Davis niggers doing to Georgia?' I said, 'I haven't done nothing to Georgia.' She said, 'You sons-of-bitches——' ".

Shortly following these conversations, the defendant appeared at the Davis restaurant. Upon entering the door of the restaurant, she became immediately aggressive. Ac-

cording to several witnesses, her first words, upon entering the door, were as follows:

"Georgia, Georgia, come out of here.  I am going to kill all these God damned sons-of-bitches niggers."

Davis testified as follows:

"I saw Florence was going to do something, and, as I started, she was getting the gun out of her stocking, that big; and against I got in front of my wife, she got her gun, and she went to pull her gun on me, and I throwed a bowl at her, and she shot."

I. One of the contentions made on behalf of the defendant is that she had no altercation with Clora Davis, and had no ill-will or evil intention toward her, nor any purpose to inflict any injury upon her.  It is argued, therefore, that the killing was unintentional and wholly accidental.

It may be assumed as true that Clora Davis was not the person the defendant intended to kill.  The evidence tended to show that she intended to kill Charles Davis. He is still living; so the crime intended was not the crime perpetrated.  She is not guilty of the murder of Charles Davis, because she failed in her attempt; and, according to her contention, she is not guilty of the murder of Clora Davis, because she did not intend to perpetrate any injury upon her.  The evidence is quite abundant to show that the defendant, with malice aforethought, did have specific in-tent to kill Charles Davis.  This was her malice, and this her intent.  The malice and intent which started the bullet is deemed, in law, to have followed it wherever it went. The fact that the bullet hit an unintended mark will not excuse the malice and intent that started it.  The killing of Clora Davis by this bullet being shown, it was enough to show that the defendant fired it with malice aforethought, and a specific intent to kill Charles Davis.  *State v. Williams,* 122 Iowa 115.  There was, therefore, no lack of proof

of the elements of the crime of murder in the second degree.

II. In explaining her possession of the revolver which she had carried in her stocking to the place of the shooting, the defendant testified as follows:

2. HOMICIDE:
rebutting
malice.

"A. I met a soldier there, and I don't know exactly what the conversation was, but he said, 'Where are you going?' and 'Are you going home?' I said, 'Yes, as soon as I go up and get Georgia.'. And he said, 'Well, will you take this for me home with you?' I said, 'What is it?' And at the time, he pulled out a revolver. He said, 'I am in without a permit,' and I am afraid the M. P. will take me up,' and I said, 'All right.' Q. And whether it was loaded or was not loaded, the information you had on that subject was simply what he said to you? A. That it wasn't. Q. That it was not? A. Yes."

By motion of the State, this evidence was stricken, as hearsay. This ruling is assigned as a ground of reversal. The possession of the revolver and the fact that it was loaded tended to show premeditation, and it was permissible to the defendant to rebut such inference by an explanation. We think the evidence was proper for that purpose. The fact that the evidence was hearsay did not render it inadmissible for such purpose. We find from the record, however, that, notwithstanding this ruling of the court, the witness was permitted, later, without objection, to testify to the facts here excluded. There was, therefore, no prejudice in the ruling.

III. The defendant testified as follows:

"It then occurred to me what I had heard about Davis as to the kind of man he was, and what I knew about him. I knew if he fought he would take care of himself. I had reports with reference to the character of man he was, as to being peaceable or vicious. Q. And what were those reports,—good or bad?"

3. HOMICIDE:
self-defense:
rumors as to
character.

The last question stated was ruled out, upon objection of the State. Here again, it was proper for the defendant, on the question of self-defense, to show reasonable grounds of apprehension for her safety. Reports heard by the defendant would be a proper consideration, as bearing upon her apprehensions. We think, however, that the testimony already given by the defendant, as above quoted, quite covered the ground. She had testified, without objection, to her actual knowledge of his bad character, and no prejudice could result to her from the exclusion of further details.

IV. Certain police officers testified on behalf of the State to the general bad reputation of the defendant as to moral character. It is now urged that these witnesses did not show competency to testify to such a question. The record discloses that the testimony of these witnesses was received without any objection.

V. The defendant requested an instruction to the general effect that the burden was upon the State to prove that the fatal shot was not accidental. Such requested instruction, if given, would have been quite misleading to the jury. The shot *was* accidental, so far as the person injured was concerned; but, as already indicated herein, such fact did not relieve it of its criminality. What we have already said on this subject is decisive also of the impropriety of several other requested instructions.

4. HOMICIDE: killing unintended person.

Requested Instructions 6 and 7 deal with the subject of self-defense. This subject was fully covered by Instruction 8, given by the court. The correctness of this latter instruction is in no manner challenged now. We have gone through the record with critical care, and we can discover no prejudicial error therein. The evidence in the record is practi-

cally conclusive of the defendant's guilt. The judgment of conviction must, therefore, be—*Affirmed*.

LADD, C. J., PRESTON and SALINGER, JJ., concur.